**Betty WOODRUFF, Plaintiff,**

v.

**MILLCREEK TOWNSHIP, Defendant.**

**Civ. A. No. 84–144 ERIE.**

United States District Court,
W.D. Pennsylvania.

April 14, 1987.

Gerald J. Villella, Erie, Pa., for plaintiff.

Carney & Good, Erie, Pa., for defendant.

### FINDINGS AND OPINION

GERALD J. WEBER, District Judge.

This is an action tried non-jury under the Equal Pay Act Amendment to the Fair Labor Standards Act, 29 U.S.C. § 206(d)(1), which prohibits discrimination between employees on the basis of sex for equal work on jobs, the performance of which requires equal effort and responsibility.

The defendant is Millcreek Township, a municipal corporation, in the County of Erie and State of Pennsylvania. The Township employs 4 persons in its Maintenance Department whose general duties are the maintenance and cleaning of the buildings and grounds housing the Township office and its various departments.

The top echelon job is called Maintenance Supervisor, held by Joseph Fickenworth. Next on the hierachy is the Assistant Maintenance Supervisor, held by William Perry. The third position is called Maintenance Helper, filled by Terrence Kohler. The fourth position is called Cleaning Helper filled by the within plaintiff, whose rate of pay is lower than that of the Maintenance Helper, with whose work she compares her own.

Plaintiff was hired in 1978. She was trained by the person she replaced. Her supervisor was Mr. Fickenworth, the Maintenance Supervisor. There was no written job description for her position at the time she was hired. She was always assigned

to the second shift, beginning at 3:30 p.m. and her duties were the daily cleaning of the Municipal Building and the Streets Department building. She is the only female employee of the department. She was never told what other Maintenance Department employees did, but she was never asked to cut grass, plow snow, use a ladder, paint interior walls, change fluorescent light bulbs, or to oil springs on garage doors, although she has done similar chores at home.

Until 1984 Plaintiff worked the second shift alone. In 1984 Kohler was assigned to the second shift. Prior to that he had worked the third shift for six years, and before that he had worked the day shift summers and the night shift (third shift) winters.

From the evidence it appears that the personnel on the first shift, the Supervisor and Assistant Supervisor do the building maintenance chores that arise from time to time, minor repairs, replacement and the like. From time to time either grass cutting or snow removal must also be done. When the Maintenance Helper was assigned to the third shift (and previously to the first shift in summer) he did some of these duties. As of April 16, 1982, written job descriptions for the Maintenance Helper and the Cleaning Helper were prepared. Principally the Cleaning Helper does all work relating to cleaning. The description says "Cleaning help will not be required to do maintenance work." The Maintenance Helper description covers "janitorial work and light maintenance work." Although Plaintiff filed a grievance in November 1982 claiming that her work was comparable to that of Kohler, there was very little evidence produced at the hearing in this case of how Kohler operated, or what tasks he performed prior to his 1984 assignment to the second shift, along with plaintiff, and we believe that the evidence is equivocal until the beginning of 1984.

Beginning with Kohler's assignment to the second shift along with plaintiff, both were assigned to cleaning work in the Township Buildings. They worked in different buildings but performed essentially the same functions in these buildings, cleaning at the end of each business day, the removal of dirt and debris from the floors, cleaning bathrooms, emptying waste baskets, and the like. While it was shown that Mr. Kohler had on occasions plowed snow during his shift, but this was only occasionally; he was not called upon to plow snow each time this was needed. Mr. Fickenworth and Mr. Perry plowed snow.

The principal contention between the parties is that in performing his cleaning duties, Mr. Kohler uses a 17 inch mechanical buffer to clean and polish floors, while plaintiff uses a 12 inch mechanical buffer. Also Mr. Kohler uses a heavier mop. Mr. Kohler testified that it takes more physical strength and effort to operate the large buffer; plaintiff says she has never been offered a chance to try the 17 inch buffer, but she is willing to be taught the use of the heavier equipment. Mr. Perry testified that the skill to use the larger buffer can be acquired in one hour.

Kohler describes his work during the usual day as cleaning the street department areas, its lunch room, locker room and shower room, removing tar from the floor, usually by wet mopping for one and a half hours daily. He then cleans the police department area, containing 13 rooms. For this he uses the heavy 17 inch buffer in a routine that provides buffing two times per week for certain rooms in that area. He testified that he spends 80% to 90% of his working time operating the heavy buffer. He also testified that he spends 5 hours per day operating the buffer.

It appears that Mr. Kohler's essential daily occupation was cleaning, that any other tasks that he performs are occasional, and are not frequent since his transfer to the second shift.

The testimony of Supervisor Fickenworth was the 17 inch buffer was heavy to operate for several hours but that teen age temporary employees from C.E.T.A. had operated it at intervals during the summer. Assistant Supervisor Perry testified that it required some skill to operate but this could be learned in one hour.

Subsequent to the non-jury trial, plaintiff's attorney provided information showing that in the fall of 1985 Mr. Fickenworth, Maintenance Supervisor, was terminated by the Board of Supervisors, and William Perry became Acting Supervisor of the department. Plaintiff admits that at that time, Mr. Kohler's duties became more differentiated from Mrs. Woodruff's. Therefore an appropriate cut off for the equal pay claim would be the end of September 1985.

After a consideration of all of the testimony and the credibility of the witnesses, we conclude that prior to January, 1984 plaintiff did not meet her burden of proof in attempting to show an equal pay act violation. However, plaintiff has shown by a preponderance that between January 1984 and September 1985 Betty Woodruff, a woman, performed job duties comparable to those performed by the higher-paid male employee, Terrence Kohler, under similar working conditions.

The job functions during this time required equal levels of skill, effort and responsibility. Any additional skill needed to run the 17 inch buffer could be taught in an hour, and such ability once gained would increase with regular use of the machine. Any snow plowing activities were occasional responsibilities and not a regular part of Kohler's duties sufficient to justify a pay differential during this period. *See Brennan v. Houston Equipment, Inc.,* 73 C.C.H. Labor 33,022 (S.D.Tex.1974); *Schultz v. Wheaton Glass Co.,* 421 F.2d 259 (3d Cir.1970). Defendant has not succeeded in showing that the differential in pay was based on any other factor than sex. We find that the plaintiff established an Equal Pay Act violation which occurred during the period from January 1984 until September 1985. We do not find that this violation was wilful. We find that we have insufficient information to establish the exact damage amount that our findings represent, and we will therefore allow the parties to present the court with either a stipulation of damages or sufficient evidentiary materials for a determination by the court.

An appropriate order will issue.